## Rieck Estate

*Bert H. Smyers,* for executors.

*Lee W. Eckels, James S. Crawford, 3rd,* and *Thorp, Bostwick, Reed & Armstrong,* for Fidelity Trust Company, one of the executors, petitioner.

*William H. Eckert, James B. Warden* and *Smith, Buchanan & Ingersoll,* for Harry R. Birmingham, executor of the estate of Mary E. Rieck, deceased.

*Robert L. Kirkpatrick* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for Mellon National Bank & Trust Co., trustee under life insurance trust.

*Tice F. Ryan* and *Bialas & Ryan,* for life beneficiaries under life insurance trust.

*John R. Holland,* trustee ad litem for interests in posse under will.

BOYLE, J., November 7, 1949.—The petition filed by the Fidelity Trust Company, one of the executors of the estate of Edward E. Rieck, deceased, for apportionment of the Federal estate tax paid by the executors presents the following questions:

1. Where the tax estate includes property upon which State inheritance taxes have been paid and other property exempt from payment of State inheritance taxes: (a) Is the Federal estate tax which is to be prorated under the Act of July 2, 1937, P. L. 2762, the gross Federal estate tax, i.e., the Federal estate tax including the portion thereof extinguished by reason of death taxes paid to any State or States? or (b) Is the Federal estate tax which is to be prorated under the Act of 1937 the net Federal estate tax, i.e., the gross Federal estate tax, less the portion thereof extinguished by reason of inheritance taxes paid to any State or States?

2. If a charity receives a part of a decedent's estate which was included in decedent's taxable estate and therefore contributed to make the Federal estate tax the amount which has been paid to the collector of internal revenue, should the charity bear the same pro-

portion of the Federal estate tax to be prorated that the amount of the bequest to such charity that was not allowed as a deduction in computing the Federal estate tax bears to decedent's net taxable estate for Federal estate tax purposes?

3. Should the Federal estate tax upon bequests made tax-free by testator's will and on the widow's exemption be borne by the residuary estate?

4. Is interest on Pennsylvania transfer inheritance tax subject to proration under the Act of 1937?

5. To what extent, if any, is the Federal estate tax (including interest thereon) incident to the corpus of the life insurance trust of May 21, 1932, to be further apportioned between the life beneficiaries and the remaindermen of the trust, under section 11(4) of the Principal and Income Act of 1947?

Edward E. Rieck died testate on January 10, 1944. His widow, Mary E. Rieck, exercised her right to take against her husband's will and thereby became entitled to one third of his testamentary estate. It is admitted by all parties that for the purpose of proration of the Federal estate tax, the widow's one third of the testamentary estate amounts to $477,416.48. Mrs. Rieck died testate on January 14, 1946.

The amount of testator's estate subject to Federal estate tax (sometimes called the net taxable estate), before deducting the $100,000 exemption allowed by the Federal Internal Revenue Code in computing the basic Federal estate tax or the $60,000 exemption allowed by the Federal Internal Revenue Code in computing the additional Federal estate tax, admittedly was $2,429,076.87. Upon this amount the gross Federal estate tax admittedly is $934,047.67. The assessed gross Federal estate tax of $934,047.67 was satisfied as follows: $133,126.15 was allowed as a credit for inheritance and estate taxes paid to the States of Pennsylvania and Florida, and the balance was paid in

cash by the executors. In arriving at testator's net taxable estate for Federal estate tax purposes, viz., $2,-429,076.87, the amount deducted from testator's gross taxable estate on account of charitable bequests was $96,748.31. If under testator's will the charitable beneficiaries are entitled to one fourth of the residuary estate before deduction of taxes, the charities will receive $165,251.61.

By articles third and seventh of his will testator made pecuniary bequests of $1,500 and by article fourth of his will testator bequeathed all of his household furniture and effects to his children (the precedent bequest of the furniture and effects to his widow having failed by reason of her election to take against the will). As appears from the third and final account of the executors, the household goods and effects were awarded by decree dated July 30, 1945, to Carl E. Rieck and testator's other children at a valuation of $2,726.50. By article eighth of his will testator directed that all of the bequests mentioned in articles third, fourth and seventh of his will "shall be free from any inheritance, transfer, succession, legacy or estate tax, and that such taxes against my estate shall be paid out of the general funds thereof".

By article twelfth of his will testator devised and bequeathed one fourth "of all the rest, residue and remainder of my estate" to charity.

Following the audit of the executors' third and final account, the Fidelity Trust Company, as one of the executors of testator's estate, presented a petition to this court for the apportionment of the Federal estate tax on testator's estate in accordance with the Proration Act of July 2, 1937, P. L. 2762.

The following persons are interested in decedent's estate within the meaning of the Proration Act of 1937. The nature of their respective interests is set opposite their respective names as follows: St. Paul's Lutheran

Cemetery (legatee) ; estate of Mary E. Rieck, deceased, Harry R. Birmingham, executor (widow) ; Frank D. Woodworth, trustee for Louise Simmons (legatee) ; Frank D. Woodworth, trustee for Wilbur Lushen (legatee) ; Frank D. Woodworth, trustee for Emma Lushen Bowman (legatee) ; Frank D. Woodworth, trustee for Walter Lushen (legatee) ; Frank D. Woodworth, trustee for Minnie Henry (legatee) ; Frank D. Woodworth, trustee for Laura Renziehausen (legatee) ; Frank D. Woodworth, trustee for Esther Simmons (legatee) ; Frank D. Woodworth, trustee for Esther Gigax (legatee) ; Frank D. Woodworth, trustee for Louise Bauman (legatee) ; Frank D. Woodworth, trustee for Walter Michel (legatee) ; Frank D. Woodworth, Bert H. Smyers and Fidelity Trust Company, trustees (legatees) ; Frank D. Woodworth and Harry R. Birmingham, trustees under deed of trust dated January 4, 1943 (legatees), and Frank D. Woodworth, Bert H. Smyers and Mellon National Bank and Trust Company (successor by merger to the Union Trust Company of Pittsburgh), trustees under life insurance trust dated May 21, 1932 (legatees).

A trustee ad litem has been appointed for persons unknown and for interests in posse under the life insurance trust dated May 21, 1932, between Edward E. Rieck and Mellon National Bank and Trust Company (successor by merger to the Union Trust Company of Pittsburgh) et al., trustees.

A trustee ad litem has been appointed for persons unknown and for interests in posse under article fourteenth of the last will and testament of Edward E. Rieck, deceased.

All parties in interest are on the record either by service of citation or voluntary appearance.

On January 19, 1949, the income beneficiaries under the life insurance trust of Edward E. Rieck, dated May

21, 1932, were granted leave to intervene in this proceeding.

Answers to the petition for proration were filed by the estate of Mary E. Rieck, deceased, and Mellon National Bank and Trust Company, one of the trustees under the insurance trust dated May 21, 1932.

The case came on to be heard. The record is complete for determination of the questions involved.

### 1 (a) and (b).

Under the provisions of the Act of June 20, 1919, P. L. 521, as amended, the proceeds of policies of life insurance payable otherwise than to the estate of the insured are exempt from Pennsylvania transfer inheritance tax.

Edward E. Rieck, by an inter vivos agreement made May 21, 1932, established an irrevocable life insurance trust whereunder the proceeds of life insurance policies on his life were made payable to the trustees for certain uses set forth in the agreement. As the proceeds of these policies were payable otherwise than to the estate of the insured they were within that category of proceeds exempted by the statute from transfer inheritance tax.

The proceeds of these life insurance policies are included in the taxable estate of decedent for Federal estate tax purposes.

The trustees under the life insurance trust assert that by apportioning the gross Federal estate tax without deducting the amount of the normal State inheritance tax allowed as a credit by the Federal Internal Revenue Code, the exemption from transfer inheritance tax allowed to proceeds of life insurance policies is destroyed. The trustees contend, therefore, that the Federal estate tax apportionable in this proceeding is the *net* Federal estate tax, i.e., the gross Federal estate

tax less normal State inheritance taxes. An able brief is submitted in behalf of this contention.

The Proration Act of 1937 directs that when a "person acting in a fiduciary capacity, has paid an estate tax, levied or assessed" under a Pennsylvania law . . . "or under the provisions of any estate tax law of the United States . . . the amount of the tax so paid . . . shall be equitably prorated among the persons interested in the estate . . . in the proportion . . . that the value of the property . . . of each such person bears to the total value of the property . . . received by all such persons . . .".

The Federal estate tax is imposed under sections 810 and 935 of the Internal Revenue Code; 26 U. S. C. §§810, 935. Section 810 imposes the so-called basic tax. Section 935 provides that "in addition to the estate tax imposed by Section 810 . . . there shall be imposed . . . a tax equal to the excess of . . ." the amount of a tentative tax computed under subsection (b) of such section 935 over the amount of tax imposed under section 810.

The unambiguous language of the Internal Revenue Code makes it quite clear that the Federal estate tax is the sum of the basic tax imposed by section 810 and the additional tax imposed by section 935. Certain credits are allowed by Internal Revenue Code section 813(b) ; 26 U. S. C. §813(b), which provides that the tax imposed by section 810 "shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State. . . . The credit allowed by this subsection shall not exceed 80 per centum of the tax imposed by section 810 . . .".

The question whether the gross or net Federal estate tax is to be prorated was considered by the Supreme Court in Mellon Estate, 347 Pa. 520. It was held (pages 533 and 534, Mr. Justice Stearne) :

"A similar objection is made by the Commonwealth that the court below improperly prorated credits for inheritance taxes paid to the Commonwealth and to other states. These credits amounted to the sum of $13,324,258.70. It is urged that the Act of 1937 contemplates the apportionment only of the net payment of the federal estate tax made by fiduciaries, and therefore that there is no authority for the proration of *credits* against the gross tax, representing payments by the fiduciaries of normal state inheritance taxes. We believe that this construction of the Act is too narrow and is inconsistent with the legislative intention to effect equality of apportionment. The Act does not state, as the Commonwealth contends, that only the net sum actually paid in cash to the collector of the estate tax is to be apportioned. It provides that the 'estate tax' paid by the fiduciary to the Federal Government and the additional Pennsylvania estate tax paid by the fiduciary shall be apportioned. The Federal Government assessed a total estate tax of $37,567,-602.59 against the Richard B. Mellon estate. That tax was paid by the executors in part by cash and in part by credits. The credits constituted part of such payment within the meaning of the Act of 1937, and we so hold. The reasons or policy which motivated the Federal Government in permitting the estate tax to be so discharged in part, need not here concern us. Cf. Knowles's Est., 295 Pa. 571."

Under the Federal Internal Revenue Code the normal State inheritance taxes are absorbed into the Federal estate tax by being credited toward the payment thereof. Under the Proration Act of July 2, 1937, P. L. 2762, it is the aggregate total of the Pennsylvania estate tax and the Federal estate tax which is to be apportioned. If the contention of the trustees of the life insurance trust of May 21, 1932, were to be sustained the court would be apportioning less than the total

amount of the estate taxes and the apportionment would not be in the proportion that the value of the property of each interested person bears to the total value of the property received by all of the interested persons.

The hearing judge holds that it is the gross amount of estate taxes without deduction of normal State inheritance taxes which is to be apportioned.

*2.*

The gross Federal estate tax of $934,047.67 results from the allowance by the Federal Government of only $96,748.31 as the amount of the estate going to charity under the provisions of article twelfth of the will. This charitable deduction of $96,748.31 was reached by deducting taxes, including Federal estate tax, from the residue of testator's testamentary estate before dividing it by 4 in order to ascertain the amount of the one fourth of the residue going to charity. The court is of the opinion, however, that the one fourth share of the residue devised and bequeathed to charity by article twelfth of testator's will should be determined before taxes are deducted. When this is done the share of the charities in the residue is $165,251.61. Testator does not provide in the twelfth article of his will that the charities are to receive the one-fourth part of his residuary estate after payment therefrom of any or all taxes. There is no reference to taxes or any other deduction in paragraph twelfth of the will. See Uber's Estate, 330 Pa. 417, where it was held that where the residuary estate is to be divided among persons whose shares are subject to different tax rates, testator may direct that the tax on the entire estate should be paid from it as a whole, instead of each of the participating beneficiaries paying the tax applicable to his own share, but to indicate such intention the language of the will should be free from doubt.

The language of the will of testator in the case at bar demonstrates an intention to give to the charities a one-fourth share of the *gross* residue of the estate.

Under the proposed distribution the charitable organizations listed in article twelfth (*c*) of testator's will are to be awarded the sum of $165,251.61. This amount is $68,503.30 more than the charitable deduction of $96,748.31 allowed in the computation of the Federal estate tax which the executors have paid. Since the charities are receiving an amount $68,503.30 in excess of the amount allowed as a charitable deduction, they are in fact receiving property of the estate which has been subjected to the imposition of a Federal estate tax. They thereby became persons interested in the estate and should be obliged to bear their pro rata share of the gross Federal estate tax. This conclusion is in harmony with the decision of the Supreme Court in Harvey Estate, 350 Pa. 53. In that case it was held with reference to the Apportionment Act of 1937 (p. 58) :

"It is unquestionable that the purpose of the Pennsylvania Act is to equitably apportion the burden of the tax. Therefore, in our opinion the application of the equitable doctrine of contribution demands that the tax be borne commensurately by those whose gifts contribute to the tax burden and conversely that there be eliminated from such burden all whose legacies do not in any way create or add to the tax."

In the instant case the charities must bear the burden of that portion of the total Federal estate tax which is attributable to the amount received by them in excess of the allowed charitable deduction of $96,-748.31.

*3.*

The testator in article eighth of his will provided as follows:

"I order and direct that all of said bequests and devises shall be free from any inheritance, transfer, succession, legacy or estate tax, and that such taxes against my estate shall be paid out of the general funds thereof."

The effect of this provision as it applies in the present proceeding is to render tax-free the $500 bequest to St. Paul's Lutheran Cemetery under article third, the $1,000 bequest to John Harvey under article seventh and the bequest, under article fourth, of the household furniture and effects to his children.

It was testator's intention that any taxes incident to these bequests should be paid "out of the general funds", i.e., the residue of the estate and not from any other part of the estate. As held in Uber's Estate, 330 Pa. 417, at page 420:

"Where a legacy is expressly given tax-free, the tax is payable out of the residuary estate as the only other fund available for that purpose."

Petitioner's proposed schedule of apportionment (Exhibit F) does not, however, charge the residue with the taxes on these tax-free bequests, but has imposed them upon the beneficiaries of the portions of testator's taxable estate numbered from (1) to (16), inclusive, in schedule F, including testator's widow and the insurance trust created by Mr. Rieck in 1932, which is not part of testator's testamentary estate. In compiling exhibit F petitioner took $2,355,847.07, the aggregate of the first 16 parts of testator's taxable estate, as the denominator of the apportioning fraction, thereby eliminating the tax-free bequests, and then took as the numerator of the fraction the value of each of the 16 parts of testator's estate. As a concrete example, the 20.265173 percent shown in exhibit F as the percentage of the gross Federal estate tax to be borne by the widow's one third is obtained by dividing $2,355,847.07 into $477,416.48, the last figure being

the value of the widow's one third of testator's testamentary estate. Petitioner's method results in dividing the taxes on the tax-free bequests among all of the beneficiaries of the portions of testator's taxable estate numbered from (1) to (16), inclusive, in schedule F, including, therefore, testator's widow and the insurance trust.

The correct apportionment of the gross Federal estate tax is as follows: The amount of testator's net taxable estate, viz., $2,429,076.87, should be divided into the amount which each beneficiary other than the residuary beneficiaries received of that taxable estate. The quotient will be the percentage of the gross Federal estate tax which each beneficiary respectively should pay. Thus in the case of the widow, $2,429,076.87, the amount of the net taxable estate, should be divided into $477,416.48, the value of the widow's one-third share, and the quotient which is 19.6542352 percent, is the percentage of the gross Federal estate tax which the widow's one third of testator's estate should bear. 19.6542352 percent of $934,047.67, the gross Federal estate tax, is $183,579.93 and that is the amount of Federal estate tax which should be apportioned to the widow's one third in this proceeding. In figuring the apportionment of the gross Federal estate tax the amount of the tax-free bequests should be added to the residuary estate, so that the share of the Federal estate tax attributable to tax-free bequests would be paid out of the residuary estate. The result would be to impose upon the residuary estate in accordance with testator's expressed intent, the taxes upon the tax-free bequests.

The widow's exemption occupies the same status as the tax-free bequests. The exemption is not allowed as a deduction by the Federal Government in computing the Federal estate tax. It therefore contributed to the tax burden. Under Pennsylvania law, however, the

widow's exemption is a preferred claim against the estate and must be paid tax-free. See Hildebrand's Estate, 262 Pa. 112; Ochsenhirt's Estate, 92 Pitts. L. J. 371. The method of apportionment submitted by petitioner in exhibit F treats the widow's exemption the same as the tax-free bequests and thereby imposes upon the widow approximately 20 percent of the estate tax on her exemption. The tax apportionable to the widow's exemption as well as to the tax-free bequests must be paid from the residue of the estate.

### 4.

The executors seek to recover from the estate of Mary E. Rieck, deceased, the sum of $169.57 on account of interest paid on Pennsylvania transfer inheritance tax. The only apportionment provided for in the Proration Act of 1937 is that of the Federal estate tax and the Pennsylvania estate tax. Interest on the Pennsylvania transfer inheritance tax was not credited against the estate taxes in discharge of any part thereof. It is therefore not apportionable in this proceeding.

### 5.

The income beneficiaries under the life insurance trust created by Edward E. Rieck on May 21, 1932, were permitted to intervene in this proceeding. They present for determination the question of the application of section 11, subsec. 4, of the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470.1, to the present problem of apportionment.

The Proration Act of 1937 provides that the ". . . proration shall be made by the orphans' court . . . and . . . in cases where a trust is created or other provision made whereby any person is given an interest in income or an estate for years or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder

thereafter shall be charged against and be paid out of the corpus of such property or fund, without apportionment between remainders and temporary estates."

Section 11(4) of the Principal and Income Act of 1947, supra, provides as follows:

"Interest and penalties on inheritance and estate taxes, levied by any authority, Federal, State or foreign, shall be paid out of principal to the extent that such interest and penalties are in excess of the rate of return which has been or shall be realized from the estate during the time that such interest and penalty have accrued."

Section 14 of the Principal and Income Act of 1947 repeals all acts and parts of acts inconsistent with the provisions of the act.

As heretofore appears, the life insurance trust was created on May 21, 1932. Decedent, Edward E. Rieck, died on January 10, 1944. It is the opinion of the court that the decision of the Supreme Court in Crawford Estate, 362 Pa. 458, resolves the question. Section 11(4) of the Principal and Income Act of 1947 cannot be constitutionally applied to a life insurance trust created by decedent on May 21, 1932. The effective date of the Principal and Income Act of 1947 is July 3, 1947. The Proration Act of 1937 provides that the estate taxes, including interest thereon (see Mellon Estate, supra), apportionable to a trust containing an estate for years, life estates, or other temporary interests and estates in remainder shall be apportioned and charged against the corpus only of the trust or fund. This provision of the Act of 1937 is a settled rule of property. To extend the application of section 11, subsec. 4, of the Principal and Income Act of 1947 to a trust created on May 21, 1932, would violate sections 1 and 9 of article I of the Constitution of Pennsylvania and the fourteenth amendment of the Constitution of the United States for the reason that it would

deprive the income beneficiaries of their property without due process of law. See Crawford Estate, supra.

No part of the Federal estate tax to be apportioned in this proceeding will be prorated against the life beneficiaries of the life insurance trust created under date of May 21, 1932. Under the provisions of the Proration Act of 1937 the decree of proration will be against the trustees as the persons who are in possession of the trust estate.

Counsel for the executors will submit a form of decree of apportionment of the Federal estate tax calculated in accordance with this opinion.